Chief Justice Suttell, concurring in part and dissenting in part.
In what I concede is an exceptionally close case, I find myself in partial disagreement with the majority; accordingly, I write separately.
The jury awarded damages in four separate amounts, as reflected in the jury verdict form: (1) $207,625.39 for loss "as it relates to charitable contributions"; (2) $83,500 for loss "as it relates to fees paid by Resource Recovery to Restivo under its contract with Resource Recovery"; (3) $20,255 for loss "as it relates to the fees paid by Resource Recovery to Restivo's successor, CCR"; and (4) $2,551,052 for loss "as it relates to investment in the [trust funds.]"
With respect to the latter amount, the investment losses, I agree with the majority that expert testimony on the issue of causation was required to give the jury an understanding of what losses were appropriately *551 attributable to Restivo, as opposed to Van Liew Trust Company, the trustee of the two trust funds, or Lefkowitz, Garfinkel, Champi & DeRienzo, the previous auditor. It is perhaps not beyond the ken of an ordinary layperson to determine that, in the circumstances of this case, Restivo's professional malpractice resulted in losses in the trusts' investment portfolios. It is a far more complicated matter, however, to quantify the loss proximately caused by the auditor's negligence.
I do not have similar concerns with respect to the other elements of damages assessed by the jury. The $207,625.39 for inappropriate charitable contributions corresponds with Joseph Centofanti's testimony concerning the amount of "non-mission related" charitable contributions made in fiscal year 2007. Mr. Centofanti also testified that he had determined that there were $209,091.32 in "non-mission related" charitable contributions in fiscal year 2006. The jury, therefore, appears to have carefully examined the evidence and awarded damages for only one of the two fiscal years for which Restivo had been engaged as an auditor by Resource Recovery.
Mr. Centofanti testified that, in his expert opinion, Restivo "failed to identify and report the improper charitable contributions." I do not believe it to be beyond the understanding of a juror of ordinary intelligence to conclude that, had Restivo discovered and reported the improper contributions made during fiscal year 2006, such contributions would have been eliminated in fiscal year 2007. The causal connection, in my judgment, does not require any technical knowledge or particular understanding of the accounting profession. Accordingly, I would affirm the judgment with respect to the award of damages as it relates to charitable contributions.
The remaining damages amounts relate to the jury's finding that Restivo "breach[ed] its contractual agreement * * * to audit Resource Recovery's financial statements for the fiscal years 2006 or 2007[.]" The $83,500 award represents the fees paid to Restivo under the terms of this contract, less the amount attributable to auditing a pension fund, and the $20,255 was the amount paid to the successor auditor to correct the financial statements that were in error. Both of these awards appear to be straightforward figures that the jury was capable of assessing, without the assistance of expert testimony as to causation, for Restivo's breach of contract. I would affirm those awards as well.